**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

**CIVIL CASE NO. 1:09cv311**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **vs.** | ) ) ) |
| **PROPAK LOGISTICS, INC.,** | ) ) |
| **Defendant.** | ) ) |
| _____ | ) |

## MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before the Court on Defendant Propak Logistics, Inc.'s

Motion for Summary Judgment on the Issue of Laches [Doc. 27].

## PROCEDURAL HISTORY

The Equal Employment Opportunity Commission (EEOC) initiated this

action in August 2009 against the Defendant Propak Logistics, Inc. (Propak)

pursuant to Title VII of the Civil Rights Act of 1964 and Title I of the Civil

Rights Act of 1991. [Doc. 1, at 1]. The EEOC alleged that Propak, an

Arkansas corporation, was doing business in Shelby, North Carolina and that

a charge had been filed by an unidentified employee alleging Title VII

violations.[1]  [Id., at 2].   The purported violations stemmed from Propak's alleged refusal to hire non-Hispanic persons for non-management positions at a Wal-Mart Distribution Center in Shelby, North Carolina. [Id.]. The EEOC sought injunctive relief as well as compensatory damages. [Id., at 3-4].

Propak moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  [Doc. 4].  This Court denied the motion without prejudice, holding that even after Bell Atl. Corp. v.Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), an employment discrimination plaintiff is not required to plead specific facts but may rely on notice pleading requirements.  [Doc. 16].  The Court found that the allegations of the Complaint sufficiently identified the nature of the discrimination, the grounds on which the discrimination was based and the time period involved.  [Id.].

Propak's motion contained an alternative basis for dismissal, the defense of laches.  In considering this alternative ground, the Court noted that both parties had submitted matters outside the pleadings for consideration. [Doc. 16].  Because those matters were relevant to the issue of laches, the

---

[1]The employee's identity, undisclosed in the Complaint, was revealed in the course of litigation as Michael Quintois (Quintois) who was hired in October 2002 and terminated on December 30, 2002. [Doc. 27-1 at 10].

2

Court denied the motion to dismiss without prejudice, citing Federal Rule of Civil Procedure 12(d). [Id.]. The parties were provided an additional period of time within which: (1) to agree that discovery should proceed prior to resolution of the issue of laches; (2) for Propak to elect to have the motion considered on the current pleadings as a motion for summary judgment; or (3) to submit additional briefing and evidence. [Id. at 17].

The parties responded, notifying the Court that they had been unable to agree on the necessity for discovery. [Doc. 17; Doc. 18]. The parties were provided an additional opportunity to explain their positions regarding the need for discovery. [Doc. 19]. The EEOC responded that it needed discovery to show that Propak had not been prejudiced by the delay between the filing of Quintois' Charge in 2003 and the initiation of this action in 2009. [Doc. 20 at 2]. The EEOC further pointed out that the administrative record, which it submitted *in camera* to the Court with a copy provided to Propak, "does not address Defendant's alleged prejudice resulting from any delay." [Id. at 3].

Propak opposed discovery, noting that the "EEOC admits that the Court's record provides sufficient factual support for Defendant's motion for summary judgment on the first prong of the laches defense, i.e. delay." [Doc. 22 at 2]. It argued that the administrative record mooted any need for

3

discovery on the issue of prejudice. Propak did, however, elect to supplement the record with additional briefing and evidence. [Doc. 18].

In considering the parties' responses, the Court specifically noted that "the EEOC has addressed only the issue of prejudice, conceding the delay but claiming that it needs discovery in order to show that the Defendant has not been prejudiced by the delay." [Doc. 23 at 6]. The Court therefore provided the parties with a period of "limited discovery related solely to the issue of prejudice." [Id. at 8]. Propak was instructed to thereafter move for summary judgment on the issue of laches if it continued to assert its entitlement to the same. [Doc. 23]. Both parties requested and received further extensions of time. The EEOC has not challenged this Court's ruling that the EEOC has conceded the length of the delay. It does, however, refute that the delay was unreasonable as well as Propak's claim of prejudice.

## STANDARD OF REVIEW

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

4

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003), cert. denied 541 U.S. 1042, 124 S.Ct. 2171, 158 L.Ed.2d 732 (2004) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

A party opposing a properly supported motion for summary judgment

> may not rest upon the mere allegations or denial of [its] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Furthermore, neither [u]nsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of [a]ny proof or evidentiary requirements

5

imposed by the substantive law, summary judgment, if appropriate, shall be entered.

Id. (internal quotations and citations omitted).

Nonetheless, in considering the facts for the purposes of a summary judgment motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## FACTUAL BACKGROUND RELATED TO LACHES

On January 2, 2003, Quintois filed a Charge of Discrimination against Propak with the EEOC. [Doc. 4-2]. In that Charge, Quintois alleged that he had been employed at Propak's Shelby, North Carolina facility

> in the position of Supervisor, (third shift), over Sorters, Fork Lift Operators, and loading and unloading trailers, until December 30, 2002, when I was discharged from employment. I was the company's only non-Hispanic Supervisor. During my employment I observed that the company was discharging non-Hispanic employees and that the company was hiring only Hispanic employees. I complained to the company about its unlawful employment practices.

[Id., at 2]. Quintois also stated in the Charge that he believed he was discharged in retaliation for making complaints about those hiring practices. [Id.]. In March 2004, Quintois filed an Amended Charge which did not

6

significantly differ from the original. [Doc. 38]. Quintois had been employed by Propak for an approximately two month period between October 2002 and December 2002. [Doc. 27-1 at 11].

During the EEOC's investigation of the Charge, Quintois retained an attorney to represent him.[2] [Doc. 21-2 at 4]. That attorney requested status reports on the investigation on the following dates: July 14, 2005; February 14, 2006; and April 19, 2006. [Id.; Doc. 32; Doc. 33; Doc. 34]. In the last two letters, counsel stated that if no up-date could be provided concerning the investigation, "my client's Notice of Suit Rights" should be sent. [Doc. 33; Doc. 34]. By August 4, 2006, Quintois' attorney requested a right to sue letter. [Doc. 35]. That request was withdrawn when counsel telephoned the EEOC investigator on February 12, 2007. [Doc. 21-2 at 5]. By June 2007, however, Quintois' attorney renewed the request for a right to sue letter. [Doc. 36]. That request was made again in December 2007. [Doc. 21-2 at 6]. The Notice of Right to Sue was finally issued to Quintois on February 7, 2008. [Id.]. The letter was issued prior to the EEOC's completion of the investigation into

---

[2]The EEOC has not filed the Administrative Record but instead delivered a copy to the Court for *in camera* review. [Doc. 21]. It also filed a chronology of its activity (the Chronology) in connection with the Charge, the validity of which has been attested to by Michael Whitlow (Whitlow), Enforcement Manager for the Charlotte District Office of EEOC. [Doc. 7-5; Doc. 21-2]. The Court has instructed that certain documents contained within the Administrative Record and referenced in the Chronology be filed in the record of this action.

Quintois' Charge. [Doc. 7-7 at 1].  As a result, the EEOC made "no finding as to the allegations contained in [Quintois'] Charge of Discrimination[.]" [Id.].

The Chronology filed by the EEOC shows that although the Charge was filed on January 2, 2003, the EEOC did not interview Quintois until August 6, 2003, six months later.[3] [Doc. 21-2 at 1].  The first interview of a witness from Propak was not conducted until August 19, 2003. [Id. at 2].  Although Propak requested several extensions of time to respond to certain demands made by the EEOC, at no time did the EEOC object to those extensions.  [Id. at 1-8]. The first time Propak's manager was interviewed was in April 2004, over a year after the Charge had been filed.  [Id. at 2].  Although Propak submitted its position statement to the EEOC on May 13, 2003, Quintois was not interviewed for a response to that statement until May 19, 2004, over a year later.  [Id. at 1, 3].

Propak requested there be no on-site investigation by the EEOC due to concerns that it would interfere with Propak's business relationship with Wal-Mart. [Id. at 2-3; Doc. 7-5 at 2].  That request, however, made on April 7, 2004, did not significantly delay the EEOC's interview of Propak's managers on April 28, 2004.  [Id.; Doc. 21-2 at 2].

---

[3]Unless otherwise noted, all events referenced herein are taken from the Chronology.

8

The Chronology contains a notation that the Charge was designated as a class case in September 2004. [Doc. 21-2 at 3]. The Administrative Record, however, does not contain evidence that any notification of that designation was provided to Propak.[4] The EEOC claims that the following language contained within both the original and amended charge should have put Propak on notice that the charge had been converted to a class case: "During my employment I observed that the company was discharging non-Hispanic employees and that the company was hiring only Hispanic employees." [Doc. 4-2; Doc. 38]. The EEOC does not allege that the Charge contains an allegation of pattern and practice discrimination.

The only other investigation taken by the EEOC in 2004 was the requesting of additional documentation from Propak and the scheduling of interviews of site managers which did not occur until 2005. [Doc. 21-2]. Some of the delay in scheduling those interviews was caused by requests for extensions from Propak. [Id.].

In March 2005, settlement was discussed between the EEOC and Propak. [Id.]. On May 26, 2005, Propak's attorney requested copies of the

---

[4]In its Response to the Motion for Summary Judgment, EEOC counsel argues that it gave Propak notice of this designation during the investigation. [Doc. 29 at 17 n.6]. It has not cited to any evidence of that notice in the record.

9

statistical data concerning "entry of applicant flow and the development of relevant labor market analysis" which had been collected by the EEOC. [Id.; Doc. 7-5 at 3]. Counsel was instructed to make the request in writing. [Doc. 21-2 at 4]. In June 2005, Propak's attorney did so on two occasions. [Id.]. In July 2005, a calculation of lost wages; that is, back pay, was submitted to the EEOC investigator but apparently not disclosed to Propak.[5] [Id.]. Quintois was interviewed again in August 2005. [Id.]. Between that interview and May 2006, nothing was done in connection with the investigation, according to the Chronology. [Id.].

In May and June 2006, four potential class members were interviewed. [Id.]. Quintois was interviewed on September 6, 2006. [Id. at 5]. Nothing further occurred in 2006. [Id.]. Although Whitlock, the EEOC Enforcement Manager, has provided an affidavit in which he states that between July 2006 and February 2007, the EEOC continued to perform statistical analysis and to review "over ten thousand (10,000) documents produced by" Propak, the Chronology does not reflect that conduct. [Id. at 4-5; Doc. 7-5 at 3].

In June 2007, over four and one-half years after the Charge was filed,

---

[5]The Chronology and Privilege Log (Doc. 21-1) lists this document as privileged. Disclosure would have alerted Propak to the fact that the EEOC had designated this as a class case.

the EEOC asked to interview Propak's managers again. [Doc. 21-1 at 5]. Citing the delay between the first interviews and the second request, Propak refused to make them available.[6] [Id.]. Propak also opposed the request because the managers sought to be interviewed no longer worked there and Propak did not know their current whereabouts. [Id. at 5-6; Doc. 7-5]. The EEOC then issued a subpoena to Wal-Mart which immediately opposed it. [Doc. 21-2 at 5-6]. The EEOC's subsequent attempts to directly subpoena the managers in November 2007 were unsuccessful. [Id. at 6]. Documents contained within the Administrative Record show that the EEOC's subpoena sent to one such individual was returned in late November 2007 as unclaimed. [Doc. 39]. A November 26, 2007 telephone interview with an individual names Kathy Ponder disclosed that she was not the person of that name who had been a manager at Propak. [Doc. 40].

In January 2008, the Legal Unit of the EEOC recommended that the subpoenas be withdrawn. [Id.]. That was done on January 18, 2008 and on February 7, 2008, the EEOC granted Quintois' fourth request that the agency issue a Right to Sue letter. [Id.].

---

[6]Propak's counsel also pointed out that the EEOC had been extremely lax in its investigation. [Doc. 37]. It was noted that the EEOC had referred Quintois' allegations to the Department of Justice in 2005 but that agency dismissed the charge in November 2005 after the completion of its investigation. [Id.].

11

On March 19, 2008, Quintois filed suit against Propak in this Court. Quintois v. Propak Logistics, Inc., Civil Case No. 1:08cv98. That suit was dismissed with prejudice on July 24, 2008. Id. at Doc. 15.

On September 29, 2008, the EEOC issued a Determination letter in which it stated the following:

> Like and related and [sic] deriving from the investigation, the evidence establishes that [Propak] failed to hire a class of non-Hispanic applicants for employment because of their race and/or national origin, non-Hispanic. Based on the foregoing, the evidence is sufficient to conclude that [Propak] violated Title VII.

[Doc. 7-7 at 1]. The EEOC invited Propak to engage in informal conciliation. [Id.]. Propak claims this was the first "sufficient notification" that the charge had been designated as a class case. [Doc. 31 at 7 n.11].

Propak responded on October 10, 2008 that effective participation in conciliation could not be accomplished "because of the extreme delay in the Commission's issuance of its determination." [Doc. 29-4].

> The Charging Party filed his charge in January 2003, almost six (6) years ago, claiming he was terminated from [Propak's] employ because of his national origin ... . Instead of focusing on the limited allegations of Charging Party's charge, the Commission went outside the scope of the charge and began a completely unrelated investigation into [Propak's] hiring practices. Now, even though the Charging Party has withdrawn his charge, and even though the Commission failed to diligently investigate and in fact did nothing to further its investigation from 2005 until this past year, the Commission has issued the recent cause finding without

12

explanation.

[Doc. 29-4 at 1]. Propak also noted that the conciliation procedures which the EEOC had recommended; such as hiring in the North and South Carolina facilities, posting notices in such facilities and training the managers thereof, could not be accomplished because Propak had closed all of its facilities in those two states. [Id. at 1, 3].

On October 14, 2008, the EEOC issued a Notice of Conciliation Failure in which it notified Propak that it considered any further conciliation efforts futile. [Doc. 7-8]. The Notice advised that the matter had been referred to the EEOC's litigation unit. [Id.]. The Complaint in this action was filed on August 12, 2009 alleging discriminatory employment practices at Propak from October 2002 through June 2004. [Doc. 1].

Leah Hamilton is the Human Resources manager for Propak. [Doc. 4-3; Doc. 29-6]. Hamilton stated that the site managers at the Shelby facility had been responsible for making the hiring decisions for non-managerial positions. [Doc. 4-3 at 3]. Kathy Ponder was the site manager from October 2002 until January 2004. [Id.]. She left Propak's employment in July 2005. [Id.]. Jeremy Gay was the site manager from February 2004 until he left Propak's employment in February 2006. [Id.]. The Shelby facility was closed no later

than May 2008 and Propak has had no facilities in North Carolina since that time. [Id.]. The closure of the Shelby facility occurred before the Determination letter issued in September 2008.

Donna Davis (Davis) is the Vice-President of Human Resources for Propak. [Doc. 29-5]. On October 6, 2011, more than eight years after the Charge was filed, she was deposed by an attorney employed by the EEOC. [Id.]. Davis testified that when Propak was notified that an EEOC Charge had been filed, all records related to the Charge had been gathered. [Id. at 7]. Davis testified that she no longer had those records which apparently no longer existed and she could not testify as to the date when they were last known to exist. [Id.]. Davis did note that when an EEOC Charge is resolved, such records were no longer kept. [Id.]. When Quintois dismissed his action against Propak, the charge was considered resolved. [Id.].

Davis also testified that the Shelby facility had closed in May 2008 and in 2010, Propak placed all personnel files in electronic (computer) format. [Id. at 8]. They did not do so, however, for facilities which had been closed. [Id.]. It was Davis' understanding that according to company policy, Propak did not retain personnel records longer than three years after the employee was no longer employed. [Id. at 9]. Moreover, Propak had no knowledge of the

14

location of past employees who had worked in the Shelby facility in 2002 through 2004.  [Id.].

> We had no employees.  We had no one.  We would have had to track down people who no longer worked for us that lost jobs working for us, not through any fault of our own.  We lost the business. ...  We would [not] expect them to remember something for seven years that ... they would have no dedication to Propak [to remember].

[Id. at 10].  Davis testified that it was unreasonable for the EEOC to expect Propak to find former employees seven years after the purported facts.  [Id.]. Davis also pointed out that even if such employees could be found, it was unreasonable to expect them to recall hiring procedures used by Propak between 2002 and 2004.  [Id.].

The Court notes that the Administrative Record as well as the Chronology contain repeated references to the production of documents to the EEOC, including employment records. [Doc. 21-2].  Those documents have not been placed in the public record of this action due to confidential information contained therein.[7]  Whitlock, however, admitted that Propak had produced over 10,000 documents although the exact nature of those documents has not been identified. [Doc. 7-5].

---

[7]In fact, the bulk of such documents have not been produced for *in camera* review by the Court.

## DISCUSSION

There is no statute of limitations for civil actions brought by the EEOC. Occidental Life Insurance Co. v. EEOC, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). If a defendant is prejudiced, however, by the EEOC's unreasonable delay in bringing suit, a court may fashion relief pursuant to the doctrine of laches. EEOC v. Navy Federal Credit Union, 424 F.3d 397, 409 (4th Cir.), cert. denied 547 U.S. 1041, 126 S.Ct. 1629, 164 L.Ed.2d 335 (2006).

> Under [Fourth Circuit] precedent, the equitable defense of laches requires a defendant to prove "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." The first element of laches, lack of diligence, is satisfied where a plaintiff has unreasonably delayed in pursuing his claim.

Id. (internal quotation and citation omitted).

There is no rule, however, defining an "unreasonable" amount of time for conducting an EEOC investigation. EEOC v. Worthington, Moore & Jacobs, Inc., 582 F.Supp.2d 731, 735 (D.Md. 2008). As for proof of prejudice, it may include unavailability of witnesses, change in personnel, and the loss of pertinent records. Id.

Although the length of the delay and the reasons therefore are questions of fact, whether the delay is unreasonable is a question of law for the Court.

16

EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 81 (3rd Cir.), cert. dismissed 469 U.S. 925, 105 S.Ct. 307, 83 L.Ed.2d 241 (1984). Likewise, while the historical circumstances leading to a claim of prejudice are questions of fact, whether those circumstances rise to the level of prejudice sufficient to invoke the equitable doctrine of laches is a question of law. Id.; Smith v. Caterpillar, Inc., 338 F.3d 730, 733 (7th Cir. 2003) (the laches defense is appropriate for summary judgment where the facts necessary to resolution are found to be not genuinely disputed).

The discretion of this Court to apply the laches defense must include a consideration that the EEOC in this Title VII case is "vindicating both the public interest in eliminating employment discrimination and the private interests of those class members it represents." Id. The Court will therefore "take into account whether there is a less drastic form of equitable relief than a complete dismissal of the action[.]" Id.

As previously noted, the EEOC concedes, as it must on this record, an almost seven year delay between the filing of Quintois' Charge and the initiation of this litigation. Its position, however, is that this is not an unreasonable amount of time. "In the EEOC's view, the mere passage of time does not indicate undue delay. Instead, it maintains, the [more than] six-year

17

period between the charge and this lawsuit reflects the commission's active investigation of the charge[.]" EEOC v. PBM Graphics, Inc., ___ F.Supp.2d ___, 2012 WL 2513512 **23 (M.D.N.C. 2012). "Although no court has found a particular period of delay to be unreasonable *per se*, there is no question that the ... [more than] six years between the filing of the charge and the commencement of this lawsuit is lengthy." Id.

The EEOC's excuse is that it "continuously investigated" the charge against Propak. However, even "fairly consistent" activity by the EEOC during a lengthy investigation is not sufficient to avoid laches "if the nature and quality of [the EEOC's investigative] activity are such as to not justify the delay[.]" PBM Graphics, 2012 WL 2513512 **23 (quoting EEOC v. Peterson, Howell & Heather, Inc., 702 F.Supp. 1213, 1221-22 (D.Md. 1989)) (other citations omitted). Here, there were significant periods when the EEOC took little or no action toward completing the investigation. EEOC v. Louisiana Power & Light Co., 1989 WL 35915 **4 (E.D.La. 1989) (unreasonable delay due to "periods of total inactivity and the lengthy periods of inter-office paper shuffling"). It took the EEOC six months to conduct the initial interview with Quintois; and, although Propak submitted its position statement in May 2003, Quintois was not interviewed for a response thereto until a full year later.

EEOC v. Liberty Loan Corp., 584 F.2d 853, 857 (8th Cir. 1978) (citing periods of lengthy administrative delays). Meanwhile, the Department of Justice initiated and completed its investigation of Propak in less than one year, resulting in a dismissal of any claim. [Doc. 37].

Although the EEOC designated the Charge as a class case in September 2004, the first interview of a potential class member did not occur until May 2006. [Doc. 21-2]. While the EEOC had a calculation of lost wages prepared by an expert, the record does not disclose that Propak was provided with this information.[8] EEOC v. Massey-Ferguson, Inc., 622 F.2d 271, 277 (7th Cir. 1980) (failure to conciliate on issue of class back pay is relevant to the question of the reasonableness of delay). Even Quintois grew weary of the slow pace of the investigation, asking no less than four times for the EEOC to issue a Right to Sue letter. [Id.]. The time expended between the filing of the charge and the issuance of a Determination letter was five years and nine months. [Id.]. Seven months were expended in attempts to subpoena Wal-Mart's records and several individuals for depositions. [Id.]. Finally, even after referral to the litigation unit, another ten months passed before the lawsuit was authorized.

---

[8]As previously noted, the Chronology filed by the EEOC lists the document identified as "Calculation of lost wages" as privileged. [Doc. 21-2 at 4].

Although conciliation proceedings failed in [October 2008], it was [ten months] before the EEOC filed suit[.] The EEOC has offered no explanation for the delays aside from its contention that the investigative case logs indicate continuous case activity through the period and that the [ten month] gap between failure of conciliation and commencement of the suit was not an inordinate amount of time to prepare a litigation recommendation for a complex ...suit. The Court will note that the [ten months] culminated in a complaint couched in very general terms which totaled [five] pages.

Massey-Ferguson, 622 F.2d at 277 (finding five years three months unreasonable and collecting cases holding delays ranging from four to five years unreasonable); EEOC v. Autozone, Inc., 258 F.Supp.2d 822 (W.D.Tenn. 2003) (five year four month delay unreasonable).

The EEOC attributes some of the delay to Propak's requests for extensions, describing the same as "recalcitrant behavior during the course of the investigation."[9] [Doc. 29 at 15]. The Chronology discloses that Propak requested extensions of time which did not exceed two months in toto. [Doc. 21-2]. Moreover, the EEOC did not object to any of Propak's requests for an extension of time, thus defeating EEOC's description of Propak's conduct as "recalcitrant." Under these circumstances, a two month delay caused by Propak compared to almost seven year delay caused by the EEOC does not

---

[9]The Court is compelled to note that the production of over 10,000 documents hardly gives the appearance of recalcitrance.

lay the blame for the delay at Propak's feet. EEOC v. Overnight Transp. Co., 2006 WL 2594479 **6 (S.D.Ohio 2006) (five years six months delay unreasonable even in a complex case); EEOC v. Dresser Industries, Inc., 668 F.2d 1199 (11th Cir. 1982) (five years unreasonable); EEOC v. Martin Processing, Inc., 533 F.Supp. 227 (D.C.Va. 1982) (four years five months unreasonable).

"Certainly, delay will not be excused merely because the EEOC activity is continuous, if the nature and quality of that activity do not justify the delay." U.S. EEOC v. Lockheed Martin Global Telecommunications, Inc., 514 F.Supp.2d 797, 802 (D.Md. 2007); Louisiana Power & Light Co., 1989 WL 35915 (administrative paper shuffling constitutes unreasonable delay). Based upon the undisputed facts in the record, the Court concludes as a matter of law that the delay in this case was unreasonable and therefore the first prong of the laches defense has been established.[10]

> Unfortunately for [Propak], the analysis does not stop there. In order to secure equitable relief, a defendant must also prove that it was prejudiced by the delay. Prejudice is demonstrated by a disadvantage in asserting or establishing a claimed right, or some other harm caused by detrimental reliance on the plaintiff's conduct. Classic elements of undue prejudice include unavailability of witnesses, changed personnel, and the loss of

---

[10]Inherent in the conclusion of unreasonableness is the conclusion that the record does not disclose reasons which would justify and excuse the delay.

pertinent records. ... Ultimately, the Court must determine whether the defendant has been crippled in its ability to succeed on the merits at trial.

Lockheed Martin, 514 F.Supp.2d at 803-04 (internal quotations and citations omitted).

Propak points to the unavailability of key witnesses, in particular Ponder and Gay, the only two site managers at the Shelby facility during the time at issue. Ponder left Propak's employment in 2005 and Gay left in 2006. Those two individuals had the hiring responsibility for non-managerial positions and their testimony would be vital in Propak's defense. Propak had no knowledge of their current addresses and locating them would be difficult, if not impossible. Smith, 338 F.3d at 733. Indeed, even the EEOC was unable to locate Ponder and another former employee in November 2007. [Doc. 39; Doc. 40].

In addition to these two key witnesses, the locations of other former employees at the Shelby facility between 2002 and 2004 were also unknown. The Administrative Record discloses that the EEOC had difficulty identifying purported class members despite the 10,000 pages of documents produced by Propak.[11] A "company should not be held responsible for the intervening

_____

[11]At one point in its Response, the EEOC claims that these voluminous documents show that the information at issue is, in fact, extant. Thus, the unavailability

22

... voluntary and involuntary terminations which normally occur with the passage of time." Dresser, 668 F.2d at 1203 (internal quotation and citation omitted). "[T]he fact that [Propak] 'faces the hardship of locating the former employees and procuring their testimony' years after the company no longer has any reason to stay in contact with them demonstrates prejudice to [Propak]" because "the law does not require [Propak] to prove the absolute unavailability of ... witnesses as a prerequisite for laches." Smith, 338 F.3d at 734 (quoting Jeffries v. Chicago Transit Authority, 770 F.2d 676, 681 (7th Cir.), cert. denied 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986)).

Propak also cites Davis' testimony that previous employees, including Ponder and Gay, will have faded memories of the time period at issue, 2002 through 2004. Smith, 338 F.3d at 733-34, 735 n.2; Peterson, Howell & Heather, 702 F.Supp. at 1223. The Court agrees.

> [I]n making this determination [the Court is] not resolving any genuine issue of material fact with respect to the witnesses' actual memories or the content of their testimony; rather, [the Court] decide[s] only that this particular factor, as one of several underlying the ... decision to apply the doctrine of laches, has reasonable factual support in the record.

---

of witnesses and the difficulty in finding them creates no prejudice. The EEOC, however, has failed to make these documents part of the record in this case, and therefore the Court cannot simply accept the EEOC's characterization of them. More importantly, Propak would be entitled to depose witnesses about the contents of any such documents, which it cannot do if they are unavailable.

23

Smith, 338 F.3d at 735 n.2. Based on the undisputed facts as to this issue, the Court concludes as a matter of law that Propak has been prejudiced in this regard.

Another instance of prejudice argued by Propak stems from the unavailability of personnel records. Davis testified that the personnel records for Quintois were immediately gathered upon receipt of his Charge. Neither the original nor the amended Charge, however, contained any notification that the EEOC intended to pursue this as a class case. [Doc. 38]. Although the Chronology contains a notation that the case was so designated in September 2004, it does not contain any notation that Propak was actually notified of that designation. [Doc. 21-2]. It was not until the Determination letter which Propak received in September 2008 that it was disclosed that the EEOC had expanded its investigation into a class case, [Doc. 7-7], and the EEOC had been unable to point to anything in the record that would tend to show the contrary.

Regardless, Davis testified that it was Propak's custom not to retain an employee's records longer than three years after they left employment. Thus, the personnel records for employees at the Shelby facility during the two year period of 2002 through 2004 would have been destroyed by 2007 as part of

routine record maintenance.  Smith, 338 F.3d at 735.  That destruction would have occurred before receipt of the Determination letter.

Davis also testified that the Shelby facility closed no later than May 2008 at which time all remaining employees were terminated.  In 2010, Propak converted all of its personnel records into digital form except the records for facilities which had been closed.  As a result, those records were also lost as part of routine record maintenance.

Citing 29 C.F.R. §1602.14, the EEOC claims that Propak was obligated by regulation to gather and retain the records of all its employees until Quintois' Charge was resolved.[12]  [Doc. 29 at 20].  This argument, however, is unavailing.  Both the dismissal of the Quintois lawsuit and Propak's protocol for the routine destruction of personnel files dictated that these documents would have been destroyed prior to the EEOC finally notifying Propak in September 2008 that it was pursuing this as a class case.  "As a matter of law, [Propak] does not have an obligation to maintain its employee records indefinitely after the filing of a charge with the EEOC."  Smith, 338 F.3d at 735 (citing Jeffries, 770 F.2d at 681); Dresser, 668 F.2d at 1204.

_____

[12]That regulation provides in pertinent part: "Where a charge of discrimination has been filed ... against an employer under Title VII, ... the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action." 29 C.F.R. §1602.14.

25

It is possible that some of those personnel records were among the 10,000 documents produced by Propak to the EEOC, even though they did not appear in the record. Nonetheless, as noted above, Propak would still face an undue hardship in attempting to locate those former employees in order to mount a defense. EEOC v. Liberty Loan Corp., 584 F.2d 853, 858 (8th Cir. 1978).

The facility at which the EEOC claims the discrimination occurred is defunct and no longer in existence. Even if the EEOC's litigation were successful, no injunctive relief could be imposed on a facility which is no longer in business. Training and education of the employees and management at such a facility could not be imposed as they are also non-existant. Propak has only one business location in Arkansas and none of the allegations in this action relate to that business. "It would be grossly unfair to require [Propak] to spend large amounts of time and money in attempting to locate former employees and records in order to defend an essentially moot lawsuit which was unreasonably delayed by EEOC." Liberty Loan Corp., 584 F.2d at 858.

The last ground raised by Propak in support of its laches defense is the possibility of potential liability for back pay to a class of individuals. While the

EEOC delayed in its investigation, the potential liability for back pay increased each day of that delay. Smith, 338 F.3d at 735; Dresser, 668 F.2d at 1204 n.3. While this factor "does not necessarily result in material prejudice because back pay is an equitable remedy within the discretion of the court," that possibility "does not eliminate the availability of the laches defense." Smith, 338 at 735.

> During the EEOC's administrative delays, the back pay meter has been running, thus exposing the defendants to greater pecuniary losses. With respect to the back pay claims, the EEOC has dealt defendants a double-fisted blow. The passage of time has hindered the defendants in their ability to prevail on the merits while at the same time inflating the potential damages defendants face if they do not prevail.

Peterson, Howell & Heather, Inc., 702 F.Supp. at 1224.

> [T]here must be a limit to the prejudice and inconvenience that can be placed on an employer because of the agency's inability or unwillingness to act promptly ... . The public policy expressed in Title VII ... was declared by Congress. If Congress does not see fit to adequately staff or fund the Commission to carry out its declaration of policy, that also is a congressional decision.

EEOC v. Bell Helicopter, 426 F.Supp. 785, 793 (N.D.Tex. 1976), abrogated on other grounds by Occidental Life, 432 U.S. 355.

The parties have been provided with a period of discovery during which

the issue of laches was explored. Viewing the facts related to laches in the light most favorable to the EEOC, Propak has still established a "valid defense of laches by proving it ha[s] suffered material prejudice as a result of [the EEOC's] unreasonably lengthy delay[.]" Smith, 338 F.3d at 735. In concluding that the EEOC's claims against Propak are barred by laches, the Court has considered that the EEOC in this Title VII case is "vindicating both the public interest in eliminating employment discrimination and the private interests of those class members it represents." Id. at 733. The Court has therefore considered whether "a less drastic form of equitable relief" is appropriate. Id. The fact remains, however, that Propak no longer conducts business at the facility at which the alleged discrimination occurred. The purported class of individuals allegedly discriminated against last existed in 2004 and it is uncertain that these individuals could even be identified at this late date. Meanwhile, for the last eight years, Propak has been embroiled in both the EEOC investigation and two lawsuits stemming therefrom, during which time it has continuously incurred attorney's fees. The interest in vindicating Propak's conduct has been served while it appears to be impossible to vindicate the private interests of unidentified and unavailable class members. Therefore, based on the undisputed facts in the record, the Court concludes

as a matter of law that Propak has been prejudiced by the unreasonable delay of the Plaintiff, and thus summary judgment in favor of Propak is warranted.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 27] is hereby **GRANTED** and this action is hereby **DISMISSED** with prejudice.

Signed: August 6, 2012

Martin Reidinger
United States District Judge

29