IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:09cv311

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER |
| PROPAK LOGISTICS, INC., | ) ) | |
| Defendant. | ) ) | |

**THIS MATTER** is before the Court on the Defendant's Motion for Attorney's Fees and Costs pursuant to 42 U.S.C. §2000e-5(k) [Doc. 46] and the Plaintiff's Objections to Portions of Defendant's Bill of Costs [Doc. 47].

**PROCEDURAL HISTORY**

The Equal Employment Opportunity Commission (EEOC) initiated this action in August 2009 against the Defendant Propak Logistics, Inc. (Propak) pursuant to Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. [Doc. 1, at 1]. The EEOC alleged that Propak, an Arkansas corporation, was doing business in Shelby, North Carolina

and that a charge had been filed in 2003 by an unidentified employee alleging Title VII violations.[1] [Id., at 2]. The purported violations were based on allegations that Propak refused to hire non-Hispanic persons for non-management positions at a Wal-Mart Distribution Center in Shelby, North Carolina. [Id.]. The EEOC sought injunctive relief as well as compensatory damages. [Id., at 3-4].

Propak moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. [Doc. 4]. This Court denied the motion without prejudice, holding that even after Bell Atl. Corp. v.Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), an employment discrimination plaintiff is not required to plead specific facts but may rely on notice pleading requirements. [Doc. 16]. The Court found that the allegations of the Complaint sufficiently identified the nature of the discrimination, the grounds on which the discrimination was based and the time period involved. [Id.].

Propak's motion contained an alternative basis for dismissal, the defense of laches. In considering this alternative ground, the Court noted that both parties had submitted matters outside the pleadings for

---

[1] The employee's identity, undisclosed in the Complaint, was revealed in the course of litigation as Michael Quintois (Quintois) who was hired in October 2002 and terminated on December 30, 2002. [Doc. 27-1 at 10].

2

consideration. [Doc. 16]. Because those matters were relevant to the issue of laches, the Court denied the motion to dismiss without prejudice, citing Federal Rule of Civil Procedure 12(d). [Id.]. The parties were provided an additional period of time within which: (1) to agree that discovery should proceed prior to resolution of the issue of laches; (2) for Propak to elect to have the motion considered on the current pleadings as a motion for summary judgment; or (3) to submit additional briefing and evidence. [Id. at 17].

The parties responded, notifying the Court that they had been unable to agree on the necessity for discovery. [Doc. 17; Doc. 18]. The parties were provided an additional opportunity to explain their positions regarding the need for discovery. [Doc. 19]. The EEOC responded that it needed discovery to show that Propak had not been prejudiced by the delay between the filing of the original Charge in this case in 2003 by Michael Quintois (Quintois) and the initiation of this action in 2009. [Doc. 20 at 2]. The EEOC further pointed out that the administrative record, which it submitted *in camera* to the Court with a copy provided to Propak, "does not address Defendant's alleged prejudice resulting from any delay." [Id. at 3].

Propak opposed discovery, noting that the "EEOC admits that the Court's record provides sufficient factual support for Defendant's motion for

summary judgment on the first prong of the laches defense, i.e. delay." [Doc. 22 at 2]. It argued that the administrative record mooted any need for discovery on the issue of prejudice. Propak did, however, elect to supplement the record with additional briefing and evidence. [Doc. 18].

In considering the parties' responses, the Court specifically noted that "the EEOC has addressed only the issue of prejudice, conceding the delay but claiming that it needs discovery in order to show that the Defendant has not been prejudiced by the delay." [Doc. 23 at 6]. The Court therefore provided the parties with a period of "limited discovery related solely to the issue of prejudice." [Id. at 8]. Propak was instructed that if after such discovery it continued to assert that it was entitled to summary judgment to file a new motion therefor. [Doc. 23]. Propak thereafter filed a Motion for Summary Judgment. [Doc. 27]. The EEOC did not challenge this Court's ruling that the EEOC had conceded the length of the delay. It did, however, argue that the delay was not unreasonable and that Propak was not prejudiced by the delay.

By Memorandum of Decision entered August 7, 2012, this Court granted Propak's motion, concluding from the uncontroverted evidence that the delay of the EEOC in investigating this case was unreasonable and that Propak had been materially prejudiced by such unreasonable delay. [Doc.

41]. The Defendant thereafter moved for attorneys' fees and costs. The EEOC timely filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit. [Doc. 53]. Thereafter, the parties filed a stipulated motion to dismiss the appeal which was granted by the Fourth Circuit. [Doc. 56-1]. The mandate issued on February 22, 2013. [Doc. 56].

## STANDARD OF REVIEW

Section 2000e-5(k) of Title 42 of the United States Code provides that a court, "in its discretion, may allow the prevailing party [in a Title VII action], other than the [EEOC] or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the [EEOC] and the United States shall be liable for costs the same as a private person." This provision applies to prevailing defendants as well as to prevailing plaintiffs. E.E.O.C. v. Great Steaks, Inc., 667 F.3d 510, 516 (4th Cir. 2012). Prevailing defendants, however, may obtain attorneys' fees in a Title VII action "only if the district court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. … [T]his standard [does] not require the defendant to demonstrate that the plaintiff brought the action in subjective bad faith." Id. at 517 (internal quotation and citation omitted). The same standard is applied when the EEOC is the losing plaintiff. Christiansburg Garment Co.

v. Equal Employment Opportunity Commission, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). "[A]warding attorneys' fees to a prevailing defendant is a conservative tool, to be used sparingly in those cases [in] which the plaintiff presses a claim which [it] knew or should have known was groundless, frivolous, or unreasonable [or that had become so]." Great Steaks, Inc., 667 F.3d at 517 (internal quotation and citation omitted).

## DISCUSSION

The Court first addresses the issue of whether the EEOC's claim was unreasonable at the time it initiated this lawsuit. To that end, the Court refers to its previous Memorandum of Decision and notes that it is the law of this case that the EEOC's delay in the investigation of the charge was unreasonable and that Propak was materially prejudiced thereby.[2] [Doc. 41].

Although the Charge was filed on January 2, 2003, the EEOC did not interview Quintois until six months later. [Id. at 8]. The first interview of a witness from Propak was not conducted until August 19, 2003. [Id.]. The first time Propak's manager was interviewed was in April 2004, more than a year after the Charge had been filed. [Id.]. Although Propak submitted its

---

[2] The EEOC dismissed its appeal from that ruling.

position statement to the EEOC on May 13, 2003, Quintois was not interviewed for the purposes of preparing a response to that statement until May 19, 2004, more than a year later. [Id.].

The Charge was designated as a class case in September 2004; however, there was no evidence that any notification of that designation was provided to Propak. [Id.]. The only other action taken by the EEOC in 2004 was to request additional documents from Propak and to schedule an interview of site managers. The interviews, however, did not occur until the following year. [Id.]. Between those interviews and May 2006, nothing more was done in connection with the investigation. [Id.].

At some time that is undisclosed in the record, the EEOC referred the Charge to the Department of Justice. In November 2005, the Department of Justice determined, after conducting its own investigation, that no action was warranted. [Id. at 19].

In May and June 2006, four potential class members were interviewed. [Id. at 10]. Quintois was interviewed again on September 6, 2006 but nothing further occurred in 2006. [Id.]. In June 2007, more than four and one-half years after the Charge was filed, the EEOC asked to interview Propak's managers again. [Id.]. By this time, the managers the EEOC sought to interview were no longer employed by Propak and

management did not know their whereabouts. [Id.]. The EEOC's attempts to subpoena the managers in November 2007 were unsuccessful. [Id.]. The EEOC conducted one interview by telephone on November 26, 2007, only to learn that the person interviewed had not worked at Propak, but only happened to have the same name as a former Propak manager. [Id.].

In January 2008, the Legal Unit of the EEOC recommended that the subpoenas be withdrawn. [Id.]. That was effectuated on January 18, 2008 and on February 7, 2008, before the EEOC had completed its investigation, it granted Quintois' fourth request that the agency issue a Right to Sue letter. [Id.]. On March 19, 2008, Quintois filed suit against Propak in this Court, Quintois v. Propak Logistics, Inc., Civil Case No. 1:08cv98. [Id. at 12]. That suit was dismissed with prejudice on July 24, 2008. [Id.].

On September 29, 2008, the EEOC issued a Determination letter in which it found that Propak had failed to hire a class of individuals. [Id.]. This was Propak's first notification that the charge had been designated as a class case. [Id.]. Propak advised the EEOC on October 10, 2008 that effective participation in conciliation could not be accomplished because of the extreme delay. [Id.]. Propak noted that Quintois had filed his charge almost six years earlier, claiming he had been terminated because of his national origin. [Id.]. Propak also noted that the EEOC did not focus on the

8

limited allegations of Quintois' charge, but instead, went outside the scope of the charge and began a completely unrelated investigation into Propak's hiring practices. [Id.]. Although Quintois withdrew his charge, the EEOC issued a cause finding without any explanation. [Id.].

The conciliation procedures which the EEOC had recommended, relating to hiring in Propak's North and South Carolina facilities, posting of notices and training of managers for those facilities, could not be accomplished because Propak had closed all of its facilities in those two states. [Id. at 13]. On October 14, 2008, the EEOC advised that the matter had been referred to the EEOC's litigation unit. [Id.]. Almost one year later, the EEOC brought this action alleging discriminatory employment practices at Propak from October 2002 through June 2004. [Id.].

By the time this action was filed, Propak no longer conducted business at the facility at which the alleged discrimination occurred. [Id. at 13-14]. The purported class of individuals allegedly discriminated against had last existed in 2004 and it was uncertain that those individuals could even be identified. [Id.]. For eight years, Propak was embroiled in two investigations, one by the EEOC and another by the Department of Justice, all the while incurring attorneys' fees. [Id.]. It also defended two lawsuits stemming from a Charge which had been voluntarily dismissed, again

incurring attorney's fees.  [Id.].

Inherent in the Court's previous ruling is a finding that the EEOC acted unreasonably by initiating litigation against Propak after an eight year investigation and at a time when the allegedly noncompliant facilities had been closed and the class of individuals purportedly injured had not existed for five years.  S.E.C. v. Hermil, Inc., 838 F.2d 1151, 1153 (11th Cir. 1988) ("Included in a district court's power to administer its decrees is the power to construe and interpret the language of the original order."); United States v. Spallone, 399 F.3d 415, 421 (2nd Cir. 2005).  The EEOC knew by November 2007 that it could not locate purported victims and witnesses.  At the time the EEOC brought this action in August 2009, it was clear that there was no manner in which Propak could comply with remedial provisions since both the facilities and the class no longer existed.[3]  Yet the agency continued to press forward with this litigation. "[A] district court may consider distinctions between the Commission and private plaintiffs in determining the reasonableness of the Commission's litigation efforts." Christiansburg Garment, 434 U.S. at 422 n. 20.  Here, even if the initiation

---

[3] The EEOC concedes that injunctive relief could not be obtained from the Propak since the facilities had been closed.  [Doc. 49 at 6].  While it argues that monetary damages were still available, this argument overlooks the fact that the class of victims could not be identified.  [Id.].

of the *investigation* itself was not unreasonable, by the time the EEOC determined to bring this action it was abundantly clear that a lawsuit would be moot and thus it was unreasonable to have filed it.  Farmer v. Navy Federal Credit Union, 2012 WL 3236721 (E.D.Va. 2012).

The Court also finds that the EEOC's pursuit of the litigation after its filing was unreasonable. The EEOC conceded that there had been an extraordinary delay nonetheless insisted on conducting discovery on the issue of whether Propak had been prejudiced by that delay.  E.E.O.C. v. Peoplemark, Inc., 2011 WL 1707281 **3 (W.D.Mich. 2011) (it was unreasonable for EEOC to continue to litigate the claim and thus drive up costs to the defendant).  Moreover, the EEOC pressed for discovery on this issue despite the fact that its own efforts in November 2007 to locate victims and witnesses had been unsuccessful.  E.E.O.C. v. Agro Distribution, LLC, 555 F.3d 462, 472-73 (5th Cir. 2009).  During the limited discovery on the issue of prejudice it was again reaffirmed that purported victims and witnesses could not be located, the facilities were closed and the records related thereto were no longer in existence.  Id.; E.E.O.C. v. TriCore Reference Laboratories, 493 Fed. App'x. 955 (10th Cir. 2012).  "[W]here the defects in the suit are of such magnitude that the plaintiff's ultimate failure is clearly apparent … at some significant point in the

proceedings, [yet] the plaintiff continues to litigate," an award of attorneys' fees is warranted.  Smith v. Smythe-Kramer Co., 754 F.2d 180, 183 (6th Cir.), cert. denied 473 U.S. 906, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).

The Court takes note that the EEOC's response to the motion for attorneys fees nowhere contains an affirmative assertion that the action was reasonably brought and pursued.  [Doc. 49].  Instead, and despite its prior concession regarding the issue of delay, the EEOC argues anew that its conduct did not materially prejudice Propak and thus did not rise to the level of laches.  [Id.].  This Court has, however, already ruled that the EEOC was guilty of laches and inherent in that ruling is a determination that the EEOC's conduct materially prejudiced Propak.  Moreover, the EEOC voluntarily dismissed its appeal from that ruling.

The EEOC made no response to the amount of the attorneys' fees sought by Propak.  Basinger v. Hancock, Daniel, Johnson & Nagle, P.C., 2010 WL 5395043 **4 (E.D.Va. 2010) (noting that despite failure to challenge calculation of attorneys' fees, court would consider reasonableness thereof).  While the Court finds this failure to respond constitutes a concession that the amount sought is reasonable, it will nonetheless consider the twelve factors approved by the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424, 434 n.9, 103 S.Ct. 1933, 76 L.Ed.2d

40 (1983). The Court first notes that in order to calculate a reasonable fee, the Court starts with the lodestar amount which is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate. Id.; Grissom v. The Mills Corporation, 549 F.3d 313, 320-21 (4th Cir. 2008). The twelve factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions presented; (3) the skill required to properly perform the legal services; (4) the attorneys' opportunity costs; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or case; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case within the legal community; (11) the nature and length of the relationship and (12) awards in similar cases. Id. Although all the factors must be considered, this Court "is not required to engage in a lengthy discussion concerning what portion of the award is attributable to each factor." Arnold v. Burger King Corporation, 719 F.2d 63, 67 n.4 (4th Cir.), cert. denied 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984). Indeed, the initial calculation of reasonable hours expended at a reasonable rate will normally include most of the twelve factors which need not be further considered. Henley, 461 U.S. at 434 n.9.

Propak seeks an award of attorneys' fees in the amount of $189,113.50 for legal services rendered from August 2009 through January 2012.[4] [Doc. 46-1 at 8-65]. A total of 542.6 hours of legal services were performed by Defendant's attorneys during a period of nearly two and a half years. A total of 43.5 hours of paralegal services were performed during the same period. Propak has provided the affidavit of attorney Stephen J. Dunn (Dunn) in which he states that the fees sought and the rates charged are reasonable based on the nature of the case, the disposition thereof, the results obtained and the prevailing rates in the legal community. [Doc. 46-1 at 68]. Grissom, 549 F.3d at 321. The attorney rates ranged from $305.00 per hour to $425.00 per hour depending on experience. [Doc. 46-1 at 4]. Indeed, Dunn testifies that these rates are lower than a number of attorneys of similar experience and reputation in the local area. [Doc. 46-1 at 68]; Id.

Propak has also provided the affidavit of John Cole, the attorney who was primarily responsible for Propak's representation in this matter. [Doc. 46-1 at 2-6]; Grissom, 549 F.3d at 321. The Court has also reviewed the

---

[4] It is unclear whether Propak seeks reimbursement for an additional sum of $3,489.45. [Doc. 46-1 at 4]. While conceding that this sum, which represents travel time and research costs, is not taxable as costs pursuant to 28 U.S.C. §1920, Propak states merely that these costs were reasonable and necessary to defend its case. [Id.]. In the absence of any justification for reimbursement of this amount, it will be denied.

time records which have been included in the record and finds that the services rendered were reasonable considering the nature of the litigation involved. Id. The Court does not find that the hours should be reduced for excessive, unnecessary, redundant or unsuccessful work. Id.

The Court therefore finds that Propak's request for an award of attorneys' fees in the amount of $189,113.50 represents the expenditure of a reasonable number of hours at reasonable rates for the attorneys and paralegals involved, considering the nature of the case, the skill required therein, and the experience, reputation and ability of the attorneys. Id. Propak's attorneys recognized and pursued a defense based on laches with success. Id. Although the Court is unaware of the length of the professional relationship between counsel and Propak, the client is presumably content with the successful representation provided. Id. The remaining factors do not weigh on one side or the other in this case.

The final issue concerns Propak's Bill of Costs pursuant to 28 U.S.C. §1920. There is a presumption that a prevailing party is entitled to recover its costs as allowed in that statute unless the opposing party can show otherwise. Cherry v. Champion International Corp., 186 F.3d 442, 449 (4th Cir. 1999). The prevailing party, however, "bears the burden of showing that the requested costs are allowable under §1920." Francisco v. Verizon

S., Inc., 272 F.R.D. 436, 441 (E.D.Va. 2011) (internal citation omitted).

Propak seeks reimbursement for a transcript of the deposition testimony of Donna Davis taken on April 7, 2005, a date which is prior to the initiation of the lawsuit. [Doc. 45-1 at 3]. Section 1920(2) provides that the cost of fees "for printed or electronically recorded transcripts necessarily obtained for use in the case" may be taxed. This deposition was taken during the investigation of the EEOC Charge. "[T]he Fourth Circuit has held that each deposition's necessity is determined at the time it was taken." Nigro v. Virginia Com. University Medical College of Virginia, 2012 WL 5378241 **2 (W.D.Va. 2012) (citing LaVay Corp. v. Dominion Federal Savings & Loan Ass'n., 830 F.2d 522, 528 (4th Cir. 1987), cert. denied 484 U.S. 1065, 108 S.Ct. 1027, 98 L.Ed.2d 991 (1988)). It therefore was not "necessarily obtained for use in the case" because it was not obtained in preparation for trial or use at trial. Cherry, 186 F.3d at 449; Nigro, 2012 WL 5378241 **2 (deposition transcript obtained solely for discovery and not used in motion for summary judgment not taxable).

Propak also asks the Court to tax against the Plaintiff the cost of expediting the transcripts of two other depositions. "Taxing fees for the expedited production of transcripts is not allowed absent a showing of necessity." Nobel Biocare USA, LLC v. Technique D'usinage Sinlab, Inc.,

2013 WL 819911 **2 (E.D.Va. 2013). Such costs have been allowed only when the party can show the necessity for the expedited service. Nigro, 2012 WL 5378241 (citing Ford v. Zalco Realty, Inc., 708 F.Supp.2d 558, 562 (E.D.Va. 2010)). Propak has not responded in any manner to the EEOC's objection to the taxation of expedited deposition charges. Thus, there is nothing before the Court showing what the normal charge for those transcripts would have been had they not been expedited. [Doc. 45-1 at 2]. The charge therefore will not be taxed.

Section 1920(4) provides that fees for the costs of making copies "of any materials where the copies are necessarily obtained for use in the case" may be taxed. Propak attached an invoice for coping costs of 505 originals, binders and "blowbacks" totaling $315.10. [Doc. 45-1 at 1]. The EEOC objects because Propak did not identify what documents were copied; thus, it is impossible to ascertain whether they were indeed "necessarily obtained for use in the case." In response to the Objections, Propak made no effort to identify the documents or to explain their necessity, referring merely to its right to recover "general printing fees." [Doc. 52 at 3]. "The burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge." Mann v. Heckler & Koch Defense, Inc., 2011 WL 1599580 **6 (E.D.Va.

2011) (citing Ford, 708 F.Supp.2d at 563). "It is clear that with respect to copying costs, mere submission of a receipt, without any specification as to what was copied, does not warrant taxation." Id. (internal quotation omitted). "Thus, this Court will not tax these copying costs[.]" Id.

Propak also requested the taxation of $236.40 for printing costs but failed to attach any invoice showing the expenditure of such amount. In response to the EEOC's objection, Propak states merely that the copies "necessary to its defense" were produced in-house at $.10 per copy. [Doc. 52 at 3]. No description of the documents copied has been provided and the Court is thus unable "to distinguish between 'necessary' expenses and those obtained for the party's convenience." Mann, 2011 WL 1599580 **7 (internal citations omitted). In "the absence of more specific explanation, these costs will not be taxed." Simmons v. O'Malley, 235 F.Supp.2d 442, 444 (D.Md. 2002).

For these reasons, the Plaintiff's objection to $1,406.13 of the Bill of costs is sustained. The Defendant will be granted recovery of costs shown thereon in the amount of $61.20, in addition to the attorneys fees awarded.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Attorney's Fees and Costs pursuant to 42 U.S.C. §2000e-5(k) [Doc. 46] is hereby **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Defendant is hereby awarded attorneys' fees in the amount of One Hundred Eighty-Nine Thousand One Hundred Thirteen Dollars and Fifty Cents ($189,113.50) against the Plaintiff Equal Employment Opportunity Commission.

**IT IS FURTHER ORDERED** that the Defendant's Bill of costs is hereby **GRANTED** in the amount of $61.20, but otherwise **DENIED**.

Signed: March 26, 2013

Martin Reidinger
United States District Judge